IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JEFFREY MONNIER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| THE HARTFORD FINANCIAL SERVICES GROUP, INC., HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, HARTFORD LIFE INSURANCE COMPANY, CONTINENTAL CASUALTY COMPANY, CONTINENTAL ASSURANCE COMPANY, and HARMON INDUSTRIES, INC., | ) ) ) ) ) ) ) ) ) ) | 8:08CV491<br><br>MEMORANDUM<br>AND ORDER |
| Defendants. | ) | |

This is an action pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132 ("ERISA"). On February 11, 2010, the court granted summary judgment in favor of the plaintiff and against the defendants, Continental Casualty Company and Hartford Life & Accident Insurance Company (together, "Hartford") (Doc. 47). Now pending is the plaintiff's motion for attorney's fees (Doc. 48) pursuant to 29 U.S.C. § 1132(g)(1).

Under § 1132(g)(1), the court, in its discretion, "may allow a reasonable attorney's fee and costs of action to either party."  "[A]lthough there is no presumption in favor of attorney fees in an ERISA action, a prevailing plaintiff rarely fails to receive fees." *Starr v. Metro Sys., Inc.*, 461 F.3d 1036, 1040-41 (8th Cir. 2006) (citing *Martin v. Arkansas Blue Cross & Blue Shield*, 299 F.3d 966, 972 (8th Cir. 2002) (en banc)).  The Eighth Circuit has identified five "non-exclusive" factors[1] for

---

[1] These factors were adopted by the Eighth Circuit in *Lawrence v. Westerhaus*, 749 F.2d 494, 495-96 (8th Cir. 1984), and are commonly referred to as the "*Westerhaus* factors."

the court to consider in exercising its discretion:

> (1) the degree of culpability or bad faith of the opposing party; (2) the ability of the opposing party to pay attorney fees; (3) whether an award of attorney fees against the opposing party might have a future deterrent effect under similar circumstances; (4) whether the parties requesting attorney fees sought to benefit all participants and beneficiaries of a plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.

*Id.* at 1041 (quoting *Martin*, 299 F.3d at 969 & n.4). "[T]he "five factors" set forth by *Westerhaus* are by no means exclusive or to be mechanically applied." *Martin v. Arkansas Blue Cross and Blue Shield*, 299 F.3d 966, 972 (8th Cir. 2002) (en banc), *cert. denied*, 537 U.S. 1159 (2003).

In 1999, the insurance company made a fully-deliberated decision to pay disability benefits to the plaintiff. As discussed in the Memorandum and Order on summary judgment (Doc. 47), the court reviewed this matter *de novo* and did not look favorably upon many of Hartford's actions, particularly after 2005, when Hartford actually placed the plaintiff under surveillance. In 2005, after a thorough and intrusive investigation, Hartford's own investigator reaffirmed that the plaintiff was totally disabled. Hartford subsequently sent form letters to at least two of the plaintiff's doctors, providing selective and incomplete medical information and asking them technical hypothetical questions, similar to those routinely presented to the vocational experts who testify in Social Security proceedings. One of the physicians later provided Hartford with clarification that he did not think the plaintiff was capable of working full time. In August 2008, however, Hartford was able to procure an "independent" medical opinion from Dr. Jacqueline Hess to the effect that the plaintiff was capable of full-time sedentary work. The quality and reasoning of Dr. Hess' opinion was addressed in the Memorandum and Order granting the plaintiff's motion for summary judgment.

The court recognizes that, under the disability insurance policy at issue, Hartford is entitled to perform an annual review of plaintiff's claim for benefits.  The processes used by Hartford after the 2005 investigation, however, do not seem so much to have been designed to correctly assess the plaintiff's "vocational potential" as to solicit questionable medical "opinions" that Hartford could parrot as an excuse to revoke plaintiff's disability benefits.  The court has determined upon *de novo* review that Hartford was not well justified in its decision to terminate the plaintiff's benefits.

Turning to the *Westerhaus* factors, the court finds that factors 1, 2 and 5 weigh in favor of the plaintiff.  The fourth factor is irrelevant in this case.  As to the third factor, an award of attorney's fees in this case may have little deterrent effect on Hartford's claim management activities; however, a failure to grant the plaintiff's fee application would tend to discourage lawyers from representing ERISA beneficiaries who have meritorious claims.

The court finds that the plaintiff should be awarded  a  reasonable attorney's fee and costs pursuant to 29 U.S.C. § 1132(g)(1).

Plaintiff requests reimbursement for the $78.00 filing fee (the complaint was filed in state court and removed to federal court) and expert witness costs of $1,650.00.  It was reasonable, and probably essential, for the plaintiff to employ an expert in this case, and the $1,650.00 for expert costs will be allowed.

The court will consider the requested attorney fee using the "lodestar" method, multiplying the number of hours reasonably expended by the reasonable hourly rates.  Plaintiff requests reimbursement for 42.90 hours of attorney time at the rate of $350.00 per hour.

"Generally, a reasonable hourly rate is to be calculated according to the prevailing market rates in the relevant community....  This determination is made, in turn, by assessing the experience

and skill of the prevailing party's attorneys and comparing their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Seal v. John Alden Life Ins. Co.*, 437 F. Supp. 2d 674, 688 (E.D. Mich. 2006) (citing *Blum v. Stenson,* 465 U.S. 886, 895 (1984)).  "When determining reasonable hourly rates, district courts may rely on their own experience and knowledge of prevailing market rates." *Hanig v. Lee,* 415 F.3d 822, 825 (8th Cir. 2005).

The $350 hourly rate was proposed by the plaintiff because counsel was retained on a contingency fee basis.  Keeping in mind that " attorney fees under ERISA are not intended to punish the losing party or provide a windfall to the beneficiary," *Seal v. John Alden Life Ins. Co.*, 437 F. Supp. 2d at 688, the court finds that an hourly rate of $250.00 per hour reflects a fair and reasonable charge for professional legal services in Nebraska by lawyers employed to perform services such as those rendered in this case.

"[T]he term 'any action' in 29 U.S.C. § 1132(g)(1) does not extend to pre-litigation administrative proceedings." *Parke v. First Reliance Standard Life Ins. Co.*, 368 F.3d 999, 1011(8th Cir. 2004).  Time spent researching and drafting the complaint, however, is properly considered as part of the litigation, even though it occurred prior to filing.  *Colby v. Assurant Employee Benefits,* 635 F. Supp. 2d 88, 99-100 (D. Mass. 2009); *see Matschiner v. Lewis,  2009 WL 995147* at *3-4, Case No. 8:07CV435 (D. Neb. April 13, 2009).

Hartford terminated the plaintiff's benefits on September 11, 2008.  The court finds that the hours expended by counsel after that date do not involve "administrative proceedings" and are compensable.  Reducing the total number of hours by the 5.1 hours expended prior to September 11,

2008, the court finds that attorney's fees should be awarded for 37.8 hours at the rate of $250.00 per hour, for a total of $9,450.00.

**IT IS ORDERED** that plaintiff's motion for attorney's fees (Doc. 48) is granted in the total amount of $11,178.00, representing $9,450.00 for attorney's fees, $1,650.00 for expert witness costs, and $78.00 for the state court filing fee.

**DATED March 22, 2010.**

> BY THE COURT:
>
> s/ F.A. Gossett
> **United States Magistrate Judge**

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.